# In the United States Court of Federal Claims

| | |
|---|---|
| ABRAHAM N. VIERNES, II,<br><br>Plaintiff,<br><br>v.<br><br>THE UNITED STATES,<br><br>Defendant. | No. 25-cv-117<br><br>Filed: July 31, 2026 |

*Brian D. Schenk*, Midwest Military & Veterans Law, PLLC, Minneapolis, MN, argued for Plaintiff.

*Delisa M. Sanchez* of the United States Department of Justice, Civil Division, Washington, D.C. argued for Defendant. With her on the briefs were *Brett A. Shumate*, *Patricia M. McCarthy*, and *Deborah A. Bynum* of the United States Department of Justice, Civil Division, Washington, D.C., and *Lieutenant Jesse Williams* of the United States Navy Office of the Judge Advocate General, General Litigation Division.

**MEMORANDUM AND ORDER**

This military pay case revolves around two decisions of authorities within the Department of the Navy (Navy) that occurred several years apart—one relating to a naval officer's eligibility for retirement, the other to his retirement pay grade. Plaintiff Abraham N. Viernes, II, who spent most of his career as an enlisted servicemember, and finished his service as a commissioned officer, argues that he should have been allowed to retire with the pay grade of a lieutenant junior grade (lieutenant or LTJG), rather than the lower officer grade of ensign. In 2006, after being discharged from service due to substandard performance of duty prior to becoming eligible for retirement, Plaintiff applied to the Board for Correction of Naval Records (BCNR or Board) for relief. The Board determined that his separation was lawful, that he was not entitled to separation pay, and that restoration of Plaintiff to active duty would be inappropriate given his substandard

professional performance during his brief time as a commissioned officer. However, the Board granted Plaintiff some relief from the consequences of his separation, in the form of a records correction making him eligible for retirement benefits in the Navy. The Board amended Plaintiff's relief in 2009 so that he could transfer to the Navy's Fleet Reserve as an enlisted servicemember and, a decade later, become eligible for retirement at his highest satisfactorily-served rank. In its 2009 amendment, the BCNR indicated that Plaintiff was expected to retire at the level of lieutenant junior grade, with a pay grade of O-2E. In 2019, Plaintiff applied to the Navy "to be advanced on the retired list to the highest grade in which he served on active duty satisfactorily" pursuant to 10 U.S.C. § 8334, and received an official retirement designation of ensign (O-1E), a lower officer rank than lieutenant (O-2E). Plaintiff once more applied to the Board for correction, but the Board found no error or injustice and accordingly declined to alter Plaintiff's military records.

Plaintiff argues that the Board unreasonably affirmed his retirement grade of ensign (O-1E) when he previously served at the lieutenant level at the pay grade of O-2E. Defendant responds that Plaintiff's arguments merely seek to repackage a non-justiciable challenge to a discretionary function of the Navy as a procedural claim. In the alternative, Defendant argues that, based on the record, the Board did not act unreasonably, and its conclusion was based on substantial evidence.

The Court finds that this case is justiciable and accordingly **DENIES** Defendant's Motion to Dismiss. However, the Court **DENIES** Plaintiff's Motion for Judgment on the Administrative Record and **GRANTS** Defendant's Motion for Judgment on the Administrative Record. After thoroughly reviewing the Administrative Record, the Court holds that the Board's decision was not arbitrary and capricious, nor was it lacking in substantial evidentiary support. Instead, the record reflects that the Board was well-supported in finding that the Navy's determination of Plaintiff's retirement grade did not merit correction.

# BACKGROUND

## I. Statutory Framework

A variety of Federal statutes regulate the payment of current and retired servicemembers, depending on their status, rank, and military service. In the Navy, enlisted members of the Regular Navy or the Navy Reserve who have "completed 20 or more years of active service in the armed forces," may then be transferred to the Fleet Reserve. 10 U.S.C. § 8330(b).[1] Once a servicemember reaches 30 years of service, including time in the Fleet Reserve, the servicemember is transferred to the retired list. *Id.* § 8331(a). At that point, the servicemember may be placed on the retired list at "the highest grade in which he served on active duty satisfactorily, as determined by the Secretary of the Navy [(Secretary)]." *Id.* § 8334(a). Naval officers who serve at least 20 years in active duty, "of which at least 10 years was service as a commissioned officer," *id.* § 8323(a)(1), may be directly retired "in the highest permanent grade in which such officer is determined to have served on active duty satisfactorily," *id.* § 1370(a)(1). Congress has granted "the Secretary of the military department concerned"—here, the Secretary of the Navy—the authority to determine the highest permanent grade of satisfactory service for officers who served at or below the rank of rear admiral. *Id.* § 1370(a)(2)(A).

When transferring officers to the Fleet Reserve, the Navy has established further regulations, including those encoded in Office of the Chief of Naval Operations Instruction (OPNAVINST) 1811.3A, *Voluntary Retirement and Transfer to the Fleet Reserve of Members of the Navy Service on Active Duty* (Feb. 28, 2012). The regulation states that, when considering

[1] The Fleet Reserve is unique to the Navy and Marine Corps: enlisted members of the Army, Air Force, and Space Force may directly retire after 20 years of service. *See* 10 U.S.C. §§ 7314 (Army), 9314 (Air Force and Space Force). Servicemembers in the Fleet Reserve receive retainer pay, which is equivalent to retired pay. *Id.* § 8330(c)(1).

whether a member "served satisfactorily in the current grade held, or in a higher grade," the following factors "are considered":

> (1) Time served in current or higher grade[;] (2) If a member voluntarily requested retirement or transfer to the Fleet Reserve in the next lower grade and has not fulfilled the required time-in-grade requirements as stated in paragraph 7[;] (3) Any conviction by courts-martial, report of misconduct, moral, or professional dereliction, or conduct not in the interest of national security[;] (4) The nature and severity of any misconduct.

OPNAVINST 1811.3A ¶ 7(i). In addition to making determinations of satisfactory service for retirement grades, the Secretary of the Navy has authority to "correct any military record of the [Navy] when the Secretary considers it necessary to correct an error or remove an injustice." 10 U.S.C. § 1552(a)(1). This same statute establishes civilian correction boards and dictates that "such corrections shall be made by the Secretary acting through boards of civilians of the executive part of that military department." *Id.*; *see Strand v. United States*, 951 F.3d 1347, 1351 (Fed. Cir. 2020) (citing 10 U.S.C § 1552(a)(1)). The BCNR is one such military-records correction board.

When a servicemember applies to the BCNR, the Board first determines whether to authorize a hearing, recommend correction without a hearing, or deny without a hearing. 32 C.F.R. § 723.3(e)(1). If the application is denied without a hearing, the Board provides brief written statement of the grounds for denial. 32 C.F.R. § 723.3(e)(3). The brief statement must include the reasons for rejection, the applicant's claims of constitutional, statutory and/or regulatory violations that were rejected, and all the essential facts upon which the denial is based, including, if applicable, factors required by regulation to be considered for determination of the character of and reason for discharge. 32 C.F.R. § 723.3(e)(4). "Attached to the statement shall be any advisory opinion considered by the Board which is not fully set out in the statement." *Id.* The Board makes its recommendation on the disposition of the case based on a record of the applicant's

service, which it compiles for decision making. *Strickland v. United States*, 423 F.3d 1335, 1339 (Fed. Cir. 2005).

The BCNR has authority to take corrective action on behalf of the Secretary. *Strand*, 951 F.3d at 1351–52. However, in certain cases, secretarial review is required, and the Board must forward the entire record, along with its recommendation, to the Secretary who will make the final decision. *Id.* at 1352; 32 C.F.R. §§ 723.6, 723.7(a) ("The record of proceedings, except in cases finalized by the Board under the authority delegated in § 723.6(e), and those denied by the Board without a hearing, will be forwarded to the Secretary."). The Secretary is not bound by the recommendation of the Board. *Strand*, 951 F.3d at 1354 ("[A] service secretary may reject the recommendation of a records correction board—even a recommendation supported by the administrative record—so long as the secretary's rejection decision is not arbitrary or capricious, unsupported by substantial evidence, or otherwise contrary to the law."). "If the Secretary's decision is to deny relief, such decision shall be in writing and, unless he or she expressly adopts in whole or in part the findings, conclusions and recommendations of the Board . . . shall include a brief statement of the grounds for denial." 32 C.F.R. § 723.7(a) (citing § 723.3(e)(4)). Accordingly, if the Secretary adopts the Board's recommendation, then the Court analyzes the Secretary's decision "in terms of the Board's rationale." *Strickland*, 423 F.3d at 1339.

The Secretary has delegated power to the Assistant Secretary of the Navy for Manpower and Reserve Affairs (ASN) to act on recommendations[2] from the Board. *See Strand*, 951 F.3d at

[2] The decisions of the Board constitute final agency action. *See Walls v. United States,* 582 F.3d 1358, 1367 n.11 (Fed. Cir. 2009) (quoting *Gillan v. Winter,* 474 F.3d 813, 817 (D.C. Cir. 2007)). However, its conclusions are referenced as "recommendations," including those decisions requiring secretarial review. *See* 32 C.F.R. § 723.6; *Strand*, 951 F.3d at 1351–52.

1349 n.2. The ASN has delegated the same power to the Assistant General Counsel for Manpower and Reserve Affairs (AGC). *Id.*

## II. Facts

### A. Plaintiff's Military Service

Plaintiff served in the Navy on active duty for 17 years. AR 151. On December 20, 2002, after 13 years, 7 months, and 25 days of enlisted service, he was commissioned and achieved the rank of ensign, which corresponds to a pay grade[3] of (O-1E). AR 8–9, 42, 652. Working at the Naval Medical Center San Diego, he achieved two relatively positive[4] fitness reports (FITREPs) from June 1, 2003, to November 24, 2003, and from November 25, 2003, to May 31, 2004. AR 856–58, 606 (defining "FITREP"). During those time periods, however, Plaintiff's supervisors noted "numerous clinical deficiencies." AR 77.

Plaintiff's personal life took a turn when, in September of 2004, his mother unexpectedly passed away. AR 149, 707. A few months later, in December, his father suffered a "debilitating stroke." AR 149; *see* AR 707. That same month, however, Plaintiff received a promotion to lieutenant junior grade (LTJG), entailing the higher pay grade of O-2E. *See* AR 860; U.S. Department of War, *U.S. Military Rank Insignia*, https://www.war.gov/Resources/Insignias/ (last visited July 14, 2026). From June 1, 2004, to February 28, 2005, Plaintiff received a FITREP

[3] "Paygrades are administrative classifications used primarily to standardize compensation across the military services. [For instance,] [t]he 'E' in E-1 stands for 'enlisted' while the '1' indicates the paygrade for that position. The other pay categories are 'W' for warrant officers and 'O' for commissioned officers." U.S. Department of War, *U.S. Military Rank Insignia*, https://www.war.gov/Resources/Insignias/ (last visited July 14, 2026). The rank of "ensign," as well as its corresponding pay grade, is one officer rank or grade below that of lieutenant junior grade. *Id.*

[4] More precisely, Plaintiff received a grade of 3.00 and 3.17 out of five on these two reports (still "[p]romotable" but scoring slightly below average for his summary group). AR 855–56, 857–58.

marking him as "Below Standards" in expertise. *See* AR 859. Again, he received a similarly adverse FITREP for his service from March 1, 2005, to June 24, 2005, marking his professional expertise as "Below Standards." AR 863.

On February 25, 2005, the hospital where Plaintiff worked convened a Competency Review Board (CRB) to consider his clinical performance. *See* AR 150. Plaintiff was not permitted to appear at the hearing, although he was allowed to provide a written statement. AR 150, 10. The CRB assessed Plaintiff as having "clearly demonstrated his inability to provide safe nursing care." AR 379. Plaintiff was removed from patient care duties on June 25, 2005, and he was assigned to a research department. AR 631. For approximately eight months, from June 25, 2005 to February 28, 2006, while working in the Nursing Research and Analysis Department, Plaintiff received a favorable FITREP that marked him as meeting or exceeding standards and as "promotable." AR 868–69. That same FITREP noted that Plaintiff was "separating from active Naval service." AR 869.

On February 28, 2006, at the request of the Commander for the Naval Medical Center, San Diego, Plaintiff was separated from service. AR 150–51. This separation left Plaintiff with just over 17 years of active-duty service: a few years short of the 20-year prerequisite to opt for transfer to the Fleet Reserve. AR 151; 10 U.S.C. § 8330(b). Although Plaintiff attempted to transfer to other sections of the Navy, such as the Supply Corps, he was unsuccessful. AR 89. Plaintiff's involuntary discharge was characterized as "GENERAL, UNDER HONORABLE CONDITIONS," and given a separation code for "SUBSTANDARD PERFORMANCE." AR 13.

**B. The 2008 BCNR Relief**

Plaintiff applied to the BCNR after his discharge, arguing that the Navy failed to afford him a hearing before the Competency Review Board in accordance with regulation, and that his separation unjustly deprived him of a substantial retirement sum. AR 126–28, 137–38. He sought

reinstatement to the rank of LTJG with all back pay and allowances and other entitlements to which he would be rewarded but for his unlawful discharge. AR 116.

In considering Plaintiff's application, the BCNR obtained advisory opinions from the Deputy Assistant Judge Advocate General (DAJAG) for Administrative Law. AR 146–57. The DAJAG's opinion stated that (i) Plaintiff should have been allowed to appear before the Competency Review Panel, (ii) Plaintiff's performance of his duties leading up to the separation was reasonably determined to be unsatisfactory, (iii) Plaintiff's separation was lawful, and (iv) stripping Plaintiff's entire retirement fund based on a relatively short unsatisfactory service period during a time of personal strife was a disproportionate consequence. AR 154–57. On or about September 29, 2008, the Board adopted the DAJAG's recommendation and accordingly found that, while Plaintiff's separation for substandard performance was free from error, his case merited equitable action based on his 17 years of service with no misconduct. AR 27–28. Thus, the Board granted Plaintiff equitable relief. AR 11–12. Specifically, the Board gave a "RECOMMENDATION" indicating that Plaintiff's naval records should be "corrected to show that he was not discharged . . . on 28 February 2006 but continued to serve until he transferred to the Retired List at the earliest possible date." AR 11. The ASN approved the recommendation and directed that Plaintiff's record be corrected accordingly. AR 24.

### C. The BCNR's 2009 Amendment

While correcting Plaintiff's records, Navy Personnel Command (NPC) notified the BCNR that (i) its recommendation failed to specify whether Plaintiff would receive active-duty credit as an officer or an enlisted, and (ii) Plaintiff could not be transferred directly to the retired list, as he lacked sufficient commissioned service time to retire as an officer immediately. AR 17; *see also* 10 U.S.C. § 8323(a)(1). On July 14, 2009, the BCNR responded via email to NPC, detailing that "[Plaintiff] should be given active duty credit and back pay as an enlisted man (SK2)" and that he

"will transfer to the fleet reserve as an enlisted man, and be eligible to receive retired pay in the highest rank satisfactorily served (LT(jg)) after 30 years." AR 16.

On June 19, 2009,[5] the BCNR's Executive Director issued a "Memorandum for the File," which stated that the Board had "previously considered Petitioner's case and directed retirement in the grade of LTJG" but that the NPC believed that "a separate grade determination should be made as to whether he should have been retired in his highest enlisted grade rather than as an officer." AR 18. The memorandum concluded that the issue had been "resolved without further Board action." *Id.*

On July 14, 2009, the Chairman of the Board issued a letter to the Secretary of the Navy amending the Board's recommended relief for Plaintiff. AR 15. The Chairman's letter corrected Plaintiff's records to show that "he be given active duty credit and back pay in the rank of SK2 (pay grade E-5)" and directing Plaintiff's transfer into the Fleet Reserve with 20 years of active service as an SK2. *Id.* Further, the Chairman's letter stated that Plaintiff would be "eligible to apply for advancement to the highest rank satisfactorily served after 30 years." *Id.* That same day, an official record copy of the letter of amendment to the Secretary was created: this letter was nearly identical to the previous letter, except for the last line, which stated that he "will be eligible to receive retired pay in the highest rank satisfactorily served (LT(jg)) after 30 years." *Compare* AR 15, *with* AR 925. The 2009 amended version entered Plaintiff's official military personnel file as the official record version. AR 669. The next day, on July 15, 2009, the Defense Finance and Accounting Service (DFAS) wrote Plaintiff, informing him that it had corrected his military

---

[5] It is unclear in the AR whether this memorandum is correctly dated as "June" instead of "July." The memo appears to refer to NPC's July 2009 back-and-forth with the Board concerning the necessity of an amendment to its 2008 decision, but appears to pre-date this discussion. At oral argument, neither party could affirm whether this was a typographical or other error. *See* Transcript, dated Apr. 2, 2026, (ECF No. 23) (OA Tr.) 70:6–9, 70:23–11.

pay from the date of his discharge until his 20-year retirement date. AR 598. The letter included a computation worksheet, which showed that Plaintiff's backpay was, at least initially, calculated using the pay rate corresponding to the rank of lieutenant and grade of O-2E. AR 601. A few months later, Plaintiff avers, he received a DD 214 discharge form, which stated that he had an enlisted rank and a pay grade of E-5—a change from his prior DD 214 discharge form, which listed him as a lieutenant. AR 582 (containing Plaintiff's statements that he received the amended DD 214 on October 27, 2009), 590 (amended DD 214 form), 591 (prior version of DD 214 form).

**D. The 2023 BCNR Decision**

In April of 2019, while in the Fleet Reserve and after reaching 30 years of total service, Plaintiff applied to the Board and requested an advancement to O-2E in his retirement grade. AR 581, 607–608.

As Plaintiff's April 2019 application states, the DFAS computations reflected that, although at least a portion of his backpay (from the date of his discharge in 2006 until sometime in 2009) had been calculated based on an O-2E grade, he was no longer listed at that grade. AR 582, 601. Plaintiff asserted that he was not given notice or explanation as to this change in pay grade. AR 582. As a result, the Board sought another advisory opinion from the NPC that May, which advised that Plaintiff was not eligible to retire at the O-2E level because he had been "automatically transferred to the retired list at the earliest possible date (April 2009)" and had not accrued sufficient time served as an officer. AR 577–78. On July 17, 2019, Plaintiff, in response, advised the Board that in his view, pursuant to 10 U.S.C. § 8334, he had reached 30 years of combined active service and service in the Fleet Reserve, entitling him to retire at the "highest grade in which he served on active duty satisfactorily, as determined by the Secretary of the Navy." AR 710 (quoting 10 U.S.C. § 8334). On September 18, 2019, the Board informed Plaintiff that he himself could accomplish his desired relief by submitting a request for advancement to NPC. AR

575. In October 2019, Plaintiff submitted such a request. AR 717–18. On April 28, 2021, the Acting Assistant Secretary to the Navy for Manpower and Reserve Affairs (ASN) informed Plaintiff that she had determined that the highest grade Plaintiff had satisfactorily served was Ensign (O-1E). AR 652.

On October 12, 2022, Plaintiff again turned to the Board, seeking a correction to his record stating that he had completed 30 combined years of active-duty and Fleet Reserve service, and would be retired as a lieutenant junior grade (O-2E). AR 655–734. Once more, the Board sought an advisory opinion from NPC, which recommended denial, stating that Plaintiff received two adverse FITREPs as a LTJG, and that his retirement rank had already been approved by the ASN. AR 643. Plaintiff responded to the advisory opinion. AR 622. On March 10, 2023, the Board denied Plaintiff's request. AR 606–11. The decision listed many material facts from Plaintiff's record, portions of the arguments from his response to the advisory opinion, and portions of the NPC advisory opinion. *See* AR 606–11. In response to Plaintiff's argument that the Board's 2009 amended relief indicated "LTJG" as his highest satisfactorily-served grade, the Board replied that it "is not empowered to direct future decisions or outcomes. When the amendment to the Board's recommendation . . . was issued on 14 July 2009, no determination had yet been made regarding the highest grade in which you served satisfactorily for retirement purposes." AR 610. The Board described its 2009 relief as a non-binding recommendation for merely equitable relief. AR 610–11. It pointed out that the 2008 decision and 2009 amendment did not find his service as a lieutenant satisfactory and affirmed the ASN's determination of his rank as O-1E "based upon several adverse FITREPs that you received as a LTJG (O-2E)." AR 611. The Board denied Plaintiff's application, concluding that there was insufficient evidence to establish probable

material error or injustice in Plaintiff's records, and that there was no error in the NPC's advisory opinion. AR 606, 611.

## PROCEDURAL HISTORY

On January 21, 2025, Plaintiff filed his Complaint in this Court. ECF No. 1 (Complaint). On June 20, 2025, Plaintiff filed his Motion for Judgment on the Administrative Record (MJAR), in accord with this Court's Scheduling Order. *See* ECF Nos. 11 (Pl. MJAR); 10 (Amended Scheduling Order). On August 27, 2025, Defendant filed its Motion to Dismiss, and In the Alternative, Response to Plaintiff's MJAR and Cross-MJAR. ECF No. 16 (Defendant's Motion or Def. Mot.). On September 26, 2025, Plaintiff filed his Response to Defendant's Motion to Dismiss and Cross-MJAR and Reply to Defendant's Response. ECF No. 17 (Pl. Reply). On December 18, 2025, Defendant filed its Reply in support of its Motion. ECF No. 21 (Def. Reply). The Court heard oral argument in this matter on April 2, 2026. *See* Minute Entry dated Apr. 2, 2026.

## APPLICABLE LEGAL STANDARDS

### I. Motion to Dismiss

To withstand a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp v. Twombly*, 550 U.S. 544, 570 (2007)). This Court "may properly grant a motion to dismiss under [Rule] 12(b)(6) when a complaint does not allege facts that show the plaintiff is entitled to the legal remedy sought." *Steffen v. United States*, 995 F.3d 1377, 1379 (Fed. Cir. 2021) (citing *Lindsay v. United States*, 295 F.3d 1252, 1257 (Fed. Cir. 2002)). At the motion to dismiss stage, this Court must "take all factual allegations in the complaint as true and construe the facts in the light most favorable to the non-moving party." *Boyd v. United States*, 134 F.4th 1348, 1352 (Fed. Cir. 2025) (quoting *Jones v. United States*, 846

F.3d 1343, 1351 (Fed. Cir. 2017)). The Court, however, need not "accept the asserted legal conclusions." *Am. Bankers Ass'n v. United States*, 932 F.3d 1375, 1380 (Fed. Cir. 2019).

### A. Justiciability

A court must grant a 12(b)(6) motion to dismiss where a claim is non-justiciable. *Antonellis v. United States*, 106 Fed. Cl. 112, 115 (2012), *aff'd*, 723 F.3d 1328 (Fed. Cir. 2013) (citing *Murphy v. United States,* 993 F.2d 871, 872–73 (Fed. Cir. 1993)); *see, e.g., Bader v. United States*, 160 Fed. Cl. 529, 543 (2022), *aff'd*, 97 F.4th 904 (Fed. Cir. 2024). "Justiciability is distinct from jurisdiction; it depends on 'whether the duty asserted can be judicially identified and its breach judicially determined, and whether protection for the right asserted can be judicially molded.'" *Murphy v. United States*, 993 F.2d 871, 872 (Fed. Cir. 1993) (quoting *Baker v. Carr*, 369 U.S. 186, 198 (1962)). Courts may evaluate a claim and fashion relief only when they can "finally and effectively decide [the controversy] under tests and standards which they can soundly administer within their special field of competence." *Voge v. United States*, 844 F.2d 776, 780 (Fed. Cir. 1988) (quoting *Greene v. McElroy*, 254 F.2d 944, 953 (D.C. Cir. 1958)).

Justiciability is a "particularly apt inquiry when one seeks review of military activities," and the Court is "scrupulous" in discerning whether a military claim is nonjusticiable. *Adkins v. United States*, 68 F.3d 1317, 1322 (Fed. Cir. 1995) (quoting *Murphy*, 993 F.2d at 872 (internal quotation marks omitted), and *Orloff v. Willoughby,* 345 U.S. 83, 94 (1953)).

## II. Motions for Judgment on the Administrative Record

In the Court of Federal Claims, suits for military pay are adjudicated under Rule 52.1(c), which provides an expedited trial on a "paper record, allowing fact-finding by the trial court." *Bannum, Inc. v. United States*, 404 F.3d 1346, 1356 (Fed. Cir. 2005) (referencing Rule 56.1, which was replaced by Rule 52.1(c)); *see* Rule 52.1(c) of the Rules of the United States Court of Federal Claims (Rule(s)). Unlike at summary judgment, genuine disputes of material fact do not preclude

the Court from granting a motion for judgment on the administrative record. *Bannum*, 404 F.3d at 1357.

"When called upon to review a decision of a corrections board, or of a Secretary taken upon recommendation from a corrections board, the standard of review is whether the decision is arbitrary, capricious, unsupported by substantial evidence, or contrary to law." *Porter v. United States*, 163 F.3d 1304, 1312 (Fed. Cir. 1998). This standard is one taken from the Administrative Procedure Act (APA). *Walls v. United States*, 582 F.3d 1358, 1367 (Fed. Cir. 2009) ("[I]t has become well established that judicial review of decisions of military correction boards is conducted under the APA."). The plaintiff must show such a violation of this standard by "cogent and clearly convincing evidence." *Stine v. United States*, 92 Fed. Cl. 776, 791 (2010), *aff'd*, 417 F. App'x 979 (Fed. Cir. 2011) (quoting *Kirwin v. United States,* 23 Cl. Ct. 497, 503 (1991)).

**A. Arbitrary and Capricious**

The APA standard, applied when reviewing decisions of the Secretary,[6] requires a reviewing court to determine whether an agency's action was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A); *see Schussler v. United States*, 152 Fed. Cl. 207, 213 (2021), *aff'd*, No. 2021-1819, 2023 WL 3090617 (Fed. Cir. Apr. 26, 2023) ("Accordingly, unless the Board's decision 'is arbitrary, capricious, unsupported by substantial evidence, or contrary to law,' this Court will not disturb the Board's decision." (quoting *Lewis v. United States*, 458 F.3d 1372, 1376 (Fed. Cir. 2006))). The Court considers whether the "agency provided a coherent and reasonable explanation of its exercise of discretion." *Dell Fed. Sys., L.P. v. United States*, 906 F.3d 982, 992 (Fed. Cir. 2018) (quoting *Banknote Corp. of Am.,*

---

[6] As the Board, ASN, and other delegates only act on military records by the authority of the Secretary of the Navy, this section references the Court's ability to review the decisions of the "Board" or "Secretary" interchangeably.

*Inc. v. United States*, 365 F.3d 1345, 1351 (Fed. Cir. 2004)). The Board's statement of denial and response to non-frivolous arguments does not need to be of "ideal clarity" so long as the Board's rationale can "reasonably be discerned." *Schussler v. United States*, 152 Fed. Cl. 207, 213 (2021), *aff'd*, No. 2021-1819, 2023 WL 3090617 (Fed. Cir. Apr. 26, 2023) (quoting *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.,* 463 U.S. 29, 43 (1983)).

Am agency's decision lacks a rational basis when the agency "entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or . . . is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *Ala. Aircraft Indus., Inc.-Birmingham v. United States*, 586 F.3d 1372, 1375 (Fed. Cir. 2009) (quoting *State Farm* , 463 U.S. at 43. Courts will "uphold a decision of less than ideal clarity if the agency's path may reasonably be discerned." *State Farm*, 463 U.S. at 43 (citing *Bowman Transp., Inc. v. Arkansas-Best Freight Sys., Inc.*, 419 U.S. 281, 286 (1974)). However, the agency's reasoning, especially if it has internal inconsistencies, must be sufficiently explained. *Stahl v. United States*, 167 Fed. Cl. 657, 686 (2023); *Draper v. United States*, 163 Fed. Cl. 284, 292 (2022) ("While the Government's argument is certainly plausible, 'an agency cannot simply adopt inconsistent positions without presenting some reasoned analysis.'" (quoting *Quinton v. United States*, 64 Fed. Cl. 118, 129 (2001))).

Still, this Court does not serve as a "super correction board." *Van Cleave v. United States*, 70 Fed. Cl. 674, 678 (2006) (quoting *Skinner v. United States,* 594 F.2d 824, 829 (Ct. Cl. 1979)). That is, the Court may not substitute its judgment for that of the BCNR because "responsibility for determining who is fit or unfit to serve in the armed services is not a judicial province." *Stine v. United States*, 92 Fed. Cl. at 791 (quoting *Heisig v. United States,* 719 F.2d 1153, 1156 (Fed. Cir. 1983)). The Court is restricted to evaluating whether the Board has done its duty in examining all

relevant evidence and making reasoned determinations. *Id.*; *Adams v. United States*, 117 Fed. Cl. 628, 654 (2014) (citation omitted) ("If the Board 'entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the [Board], or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise[,]' its decision runs afoul of even this lenient standard of review.").

Agency decisions are entitled to a "presumption of regularity." *Bowen v. Am. Hosp. Ass'n*, 476 U.S. 610, 626–27 (1986) (quoting *State Farm*, 463 U.S. at 43 n.9). This "strong presumption of regularity" accordingly "accompan[ies] government proceedings," and presumes "that the military carries out its responsibilities properly, lawfully and in good faith." *Banerjee v. United States*, 77 Fed. Cl. 522, 533 (2007) (citing *Richey v. United States*, 322 F.3d 1317, 1326 (Fed. Cir. 2003); *Porter*, 163 F.3d at 1316). "The plaintiff bears the burden of overcoming the 'strong . . . presumption.'" *Id.* (quoting *Bernard v. United States,* 59 Fed. Cl. 497, 501 (2004), *aff'd,* 98 F. App'x 860 (Fed. Cir. 2004)); *Stine*, 92 Fed. Cl. at 791 ("[Plaintiff] 'must also overcome the presumption of regularity which attaches to the actions of the BCNR.'" (quoting *Boyer v. United States,* 81 Fed. Cl. 188, 191 (2008), *aff'd per curiam* No.2008–5080, 323 F. App'x 917 (Fed. Cir. 2009))).

### B. Supported by Substantial Evidence

In examining the BCNR's decision making for arbitrary and capricious behavior, the Court may inquire as to whether the Board's conclusions are supported by substantial evidence. *Stine*, 92 Fed. Cl. at 791 (quoting *Kirwin v. United States,* 23 Cl. Ct. 497, 503 (1991)). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Strand*, 951 F.3d at 1351 (quoting *Consol. Edison Co. of N.Y. v. NLRB*, 305 U.S. 197, 229 (1938)). This standard requires "something less than the weight of the evidence but more

than a mere scintilla of evidence." *In re Nuvasive, Inc*., 842 F.3d 1376, 1379–80 (Fed. Cir. 2016) (quoting *In re Kotzab*, 217 F.3d 1365, 1369 (Fed. Cir. 2000)).

## DISCUSSION

Plaintiff's argument is straightforward. He argues that since the BCNR's 2009 determination providing him relief from his prior separation purportedly directed that he be retired at the LTJG (O-2E) level, the BCNR's subsequent affirmation of the ASN's determination of ensign (O-1E) for purposes of retirement pay neither reconciles the alleged inconsistency nor supports the decision for denial with sufficient reasoning. Defendant responds in two parts: *first,* Defendant moves for this Court to dismiss Plaintiff's suit as non-justiciable. *Second*, in the alternative, Defendant argues that the Court should grant it favorable judgment on the administrative record, as the Board's 2023 decision was not arbitrary and capricious, and its denial of Plaintiff's benefits was adequately supported by the record. The Court concludes that this matter is justiciable based on controlling precedent. The Court then considers the parties' dueling MJARs and determines that the Board's decision was neither arbitrary and capricious, nor based on insubstantial evidence.

### I. Motion to Dismiss

Defendant moves to dismiss the Complaint pursuant to Rule 12(b)(6) as non-justiciable. Plaintiff responds that his claim is justiciable as a request for compensation that was denied based on unreasonable or unsupported government decision-making. As explained further below, the Court agrees with Plaintiff that this action is justiciable and correspondingly denies Defendant's Motion to Dismiss.

#### A. Plaintiff's Claim is Justiciable

Defendant contends in its Motion to Dismiss that the determination of Plaintiff's grade at retirement is a non-justiciable issue. Def. Mot. at 14, 15. Specifically, Defendant argues that for

all officers below rear admiral, the Secretary of the Navy retains sole discretion over whether an officer has served at a grade "satisfactorily" and accordingly merits that grade at retirement. *Id.* at 16 (citing 10 U.S.C. § 1370(a)(2)(A)). According to Defendant, a determination entirely under the discretion of the Secretary and not "limited" by any other "tests and standards" established by Congress is non-justiciable. *Id.* (citing *Murphy*, 933 F.2d at 872). In other words, Defendant asserts that the Court cannot question Plaintiff's officer grade determination or restore his rank without intruding into the merits of the Secretary's decision. *Id.* at 17 (citing *Bader*, 160 Fed. Cl. at 543).

Plaintiff retorts that his claim is not lodged against the merits of the ASN's grade determination in a vacuum; rather, he claims a procedural error in the BCNR's affirmance of the ASN's determination. Pl. Reply at 6. Said differently, as Plaintiff asserts, there is a world of difference between a challenge to reevaluate the merits of a secretarial grade determination and a challenge to a BCNR decision as arbitrary and capricious. *Id.* at 8–9. Finally, during oral argument, Plaintiff also pointed to *Gersten v. United States*, No. 2025-1233, 2026 WL 925596 (Fed. Cir. Apr. 6, 2026) and *Bader*[7] in support of his argument. OA Tr. 29:2, 14.

Here, Plaintiff contends that the Board, by not reconciling the inconsistent positions it took on his grade, was arbitrary and capricious. Pl. Reply at 8. According to Plaintiff, the inscrutability of the Secretary's (or ASN's) decisions does not figure in the matter because Plaintiff's contention is that the Board failed to adequately explain its own decision not to correct Plaintiff's records to show his retirement as an LTJG. *Id.* Further, Plaintiff brings a claim that the Board failed to consider all his mitigating evidence, citing *Chisolm v. United States*, 41 F. App'x 394, 398–99

[7] At oral argument, Plaintiff's counsel only referenced the parties' arguments in *Gersten*, as the Federal Circuit issued its opinion in *Gersten* a few days after oral argument occurred in the present action. *See* OA Tr. 29:2, 14; *Gersten*, 2026 WL 925596.

(Fed. Cir. 2002), which addressed a similar Section 1552(a)(1) civilian board in the Air Force. *Id.* at 7. *Chisolm* states that, when a records correction board investigates an alleged material defect or injustice in a servicemember's records, "[i]mplicit in such a determination is a meaningful consideration of the evidence presented by the applicant." *Chisolm*, 41 F. App'x at 398. Here, Plaintiff argues, the Board failed to do more than "recit[e]" the presence of positive FITREPs or Plaintiff's argument that the ASN drew improper negative inferences from his three years of separation. *Id.* at 12–13. Additionally, Plaintiff emphasizes in his MJAR and Reply that his claims arise not only from a general prohibition on arbitrariness or requirement for meaningful consideration, but from the Board's alleged violation of explicit Navy regulations encoded in OPNAVINST 1811.3A, *Voluntary Retirement and Transfer to the Fleet Reserve of Members of the Navy Service on Active Duty* (Feb. 28, 2012). Pl. MJAR at 29; Pl. Reply at 10. Plaintiff asserts that the ASN's 2021 decision and BCNR's 2023 decision gave no indication that the OPNAVINST factors were considered at all. Pl. MJAR at 29; Pl. Reply at 10.

The Court agrees with Plaintiff that this matter is justiciable and accordingly denies the Motion to Dismiss. It is true that "[t]he merits of a service secretary's decision involving military affairs are unquestionably beyond the competence of the judiciary to review." *Adkins v. United States*, 68 F.3d 1317, 1322 (Fed. Cir. 1995); *see also Orloff*, 345 U.S. at 94. However, while the merits of a particular decision by the Secretary (and its delegate, the Board) are off-limits, "a challenge to the particular *procedure* followed in rendering a military decision may present a justiciable controversy." *Adkins*, 68 F.3d at 1323 (emphasis in original). The Court of Federal Claims, understanding that distinction, has reviewed challenges to military board decisions in the past based on allegations of unreasonable or unsubstantiated Board or secretarial decisions. *Krauss v. United States,* 40 Fed Cl. 834, 839 (1998), *aff'd*, 185 F.3d 886 (Fed. Cir. 1999)); *Woods*

*v. United States*, No. 20-1462C, 2021 WL 3639688, at *5 n.7 (Fed. Cl. June 23, 2021), *aff'd*, No. 2021-2261, 2022 WL 2898953 (Fed. Cir. July 22, 2022); *Quinton v. United States*, 64 Fed. Cl. 118, 124 (2005).

Recently, the United States Court of Appeals for the Federal Circuit (Federal Circuit) directly addressed this justiciability question in *Gersten v. United States*. No. 2025-1233, 2026 WL 925596, at *3 (Fed. Cir. Apr. 6, 2026). There, the Federal Circuit clarified that a claim for retirement pay at a certain level, based on allegedly arbitrary or unlawful activity of the Secretary in making a retirement grade determination, was justiciable. *See id.* As the Circuit explained, a court cannot interfere with the Secretary's judgments regarding the quality of military service, but it may "review 'society's legal obligations to those who are no longer within the military forces.'" *Id.* (quoting *Fisher v. United States*, 402 F.3d 1167, 1182 (Fed. Cir. 2005)). While "[t]o be sure, there may be aspects of the Secretary's decision that are nonjusticiable because they are committed to the Secretary's discretion" (such as "weigh[ing] established misconduct against [] good service"), challenging the Secretary's decision based on insubstantial evidence is not one of them. *Id.* (internal quotations omitted).

Defendant maintains in its briefing and at oral argument that Plaintiff's claims for a higher retirement pay grade are all, at heart, nonjusticiable as claims against the Secretary's discretionary service evaluation. Def. Mot. at 15, 17; OA Tr. 13:15–25. Consistent with *Gersten*, *Fisher*, and *Bader*, the Court must reject that assertion: "retirement claims are not categorically nonjusticiable." *Gersten*, 2026 WL 925596, at *3. Therefore, to the extent that Plaintiff "claims that the Board's decision is not supported because there was no substantial evidence of the conduct alleged, that claim is justiciable." *Id.*; *see also Fisher*, 402 F.3d at 1180 ("[In deciding] eligibility for disability retirement pay[,] [t]he cases are consistent that this review is conducted under . . .

essentially the standard under which administrative agency decisions are reviewed: whether the decision is arbitrary or capricious, unsupported by substantial evidence, or otherwise not in accordance with law."); *Bader*, 160 Fed. Cl. at 909.

Such a justiciable claim is present here: Plaintiff maintains that the Board acted arbitrarily and capriciously and without the support of substantial evidence. Compl. ¶¶ 76–78. As Plaintiff's Complaint frames it, the BCNR "directed that Plaintiff be placed on the retired list in the grade of LTJG," and in 2009 amended its relief to state that Plaintiff "will be eligible to receive retired pay in the highest rank satisfactorily served (LT(jg)) after 30 years." *Id.* ¶¶ 40, 42. However, the Complaint also states that in 2021, a brief memorandum from the ASN stated that it determined that the highest grade Plaintiff satisfactorily held was that of the lower grade of ensign. *Id.* ¶ 54. According to Plaintiff, the BCNR's 2023 denial of Plaintiff's application to change this record was arbitrary and capricious in its reasoning, failed to address substantial evidence, violated naval regulations, and contained no substantial support in the record for its explanation of the ASN's decision. *Id.* ¶¶ 76–78. Plaintiff's allegations clearly amount to procedural challenges or challenges to the general duty of the Board to perform reasonably and provide adequate evidentiary support for its decisions. *See Fisher*, 402 F.3d at 1177; *Gersten*, 2026 WL 925596, at *3; *Draper*, 163 Fed. Cl. at 290 (citing *Chisolm*, 41 F. App'x at 402 ("Where a corrections board fails to address contradictory evidence, however, or fails to expressly analyze evidence altogether, the board's decision may be arbitrary and capricious.")). It may be that a plaintiff cannot challenge the merits of ASN's determination of what is satisfactory service, but he can bring a claim, as Plaintiff does here, that the Board failed in its obligation to follow procedure and provide sufficient coherent reasons for its decision not to correct Plaintiff's record. *See Fisher*, 402 F.3d at 1177 ("A court may decide whether the military has complied with procedures set forth in its own regulations

because those procedures by their nature limit the military's discretion."); *Quinton*, 64 Fed. Cl. at 126 (finding the Board's decision arbitrary and capricious because it was "internally inconsistent and not supported by the administrative record."). Additionally, Plaintiff's allegation that the Board wrongly affirmed an evasion of binding procedure in OPNAVINST 1811.3A is a procedural claim that this Court can review. *See* Pl. MJAR at 29; Pl. Reply at 9–10; *Fisher*, 402 F.3d at 1177. Thus, Plaintiff's claims as pleaded in his Complaint are justiciable, and accordingly Defendant's Motion to Dismiss is denied.

## II. Motions for Judgment on the Administrative Record

In his MJAR, Plaintiff argues that the Board's 2023 decision was arbitrary and capricious because it contradicted his prior relief, contradicted naval regulations, and failed to consider the whole record. Pl. MJAR at 24, 26, 29. Defendant responds that there is no inconsistency, as the Board's prior relief was limited, equitable, and had no binding power on the later Board. Def. Reply at 6. Defendant also contends that the Board's decision, incorporating several advisory opinions, fully explained the rational basis for its decision and that there was substantial evidence for the conclusion it reached.

As the Board's 2023 decision adequately explained the lack of error or injustice in the assignment of the retirement pay grade of ensign to Plaintiff, the Court will not disturb the Board's affirmation of the Secretary's determination.

### A. Whether the 2023 BCNR Decision was Arbitrary and Capricious

Plaintiff's first argument is that the Board's unfavorable determination in 2023 (affirming the ASN's decision to assign Plaintiff a retirement pay grade of E-5) was inconsistent with its determination in 2008 or 2009 that Plaintiff be retired at the lieutenant (O-2E) level. Pl. MJAR at 17. Plaintiff argues that the Board left the inconsistency unresolved and unexplained; therefore, the Board acted unreasonably. *Id.* at 17–19. As Plaintiff describes it, the BCNR's 2009 amended

relief "specifically contemplated" that he would be advanced to O-2E after accruing 10 years on the Fleet Reserve. *Id.* at 24. According to Plaintiff, this amended relief was further altered to include the signifier "LT(jg)" in the official record version. *Id.* at 25 (citing AR 15; 925). Furthermore, Plaintiff argues, on June 19, 2009, the Board's director described the BCNR 2008 decision as having "directed retirement in the grade of LTJG." Pl. Reply at 11 n.3 (quoting AR 18); Pl. MJAR at 28. This directive was, in Plaintiff's view, more than a "preliminary determination," because a representative of the ASN (himself a delegate of the Secretary) approved the 2008 recommendation without modification. Pl. Reply at 11.

Plaintiff further contends that the Board's later 2023 decision does not provide a "reasoned analysis" for how the ASN could have then concluded that Plaintiff should be assigned a lower officer rank, given the Board's apparent assumption in 2009 that he would be retired as a lieutenant. Pl. MJAR at 25 (citing *Stahl*, 167 Fed. Cl. at 686). "By failing to reconcile these inconsistent positions," Plaintiff concludes, "the BCNR acted in the very manner that courts have repeatedly held to be arbitrary and capricious." Pl. Reply at 12.

Defendant responds by stating that Plaintiff "mischaracterizes" the Board's 2008 relief and 2009 amendment as a final directive that he be retired as a lieutenant. Def. Mot. at 20. Defendant notes that the 2023 BCNR decision explains that the portion of the 2009 amendment suggesting that Plaintiff's highest position satisfactorily served would be lieutenant is "only . . . a recommendation." *Id.* (quoting AR 739–40). Additionally, Defendant argues that the earlier Board's relief was merely equitable; the 2008–09 Board did not find error or unlawfulness in Plaintiff's separation for substandard performance, only that he deserved some relief from the consequences. *Id*. at 21, 22; *see* AR 27 (including the DAJAG's advisory opinion that "the result

seems disproportionate in light of the circumstances"). Indeed, as Defendant points out, Plaintiff himself does not argue that his service was satisfactory at the LTJG level. Def. Mot. at 18.

Upon a thorough review of the record, the Court concludes the Board's 2023 decision was not arbitrary. It is accurate and undisputed that the BCNR's relief from 2008–09 contains references to Plaintiff's retirement at the lieutenant grade. *See* AR 15 (non-official records version of 2009 amendment, not specifying rank), 925 (official records copy, including "(LT(jg))"). There are also two BCNR communications referencing (LT(jg)). *See* AR 16 (email dated July 14, 2009, mentioning "EX-LTJG ABRAHAM N. VIERNES, II" in the subject line and stating that Plaintiff is "eligible to receive retired pay at the highest rank satisfactorily served (LT(jg))"); AR 18 (June 19, 2009 "MEMORANDUM FOR THE FILE" describing the 2008 relief as "direct[ing] retirement in the grade of LTJG.").

However, Plaintiff's focus on the 2008–09 Board action misses the proverbial forest for the trees. There was no final determination of Plaintiff's highest satisfactorily served rank until the ASN's decision in 2021. *See* AR 652 (ASN's 2021 grade determination of O-1E). The 2008–09 relief and the 2021 grade determination were two separate authorities, issued more than a decade apart, making distinct dictates, ordered toward two different purposes. *Contrast* AR 8 ("Pursuant to the provisions of [10 U.S.C. § 1552], Petitioner . . . filed an application with this Board . . . [which] determined that the corrective action indicated below should be taken."), *and* AR 11 ("[H]is performance was clearly unsatisfactory. Therefore, the only possible relief is to restore him to active duty which is clearly inappropriate given his unsatisfactory performance or to correct the record to show that he qualified for retirement."), *with* AR 654 ("[P]ursuant to [10 U.S.C. § 8334], I have determined the highest grade and rank in which you have satisfactorily served to be that of ENSIGN (O-1E)."). The underlying issue or "injustice" the Board addressed

in 2008–09 was not Plaintiff's retirement grade; rather, it was equitable relief for a disproportionate consequence of separation, in the form of restoring eligibility for retirement in the Navy via transfer to the Fleet Reserve. *See* AR 10 (citing the DAJAG's opinion that Plaintiff's "case merited equitable consideration."). Indeed, the BCNR in 2008 and 2009 did not have the authority to grant future relief, only to correct existing records. *See* AR 610; *see also* 10 U.S.C. § 1552(a)(1) ("The Secretary of a military department may correct any military record of the Secretary's department when the Secretary considers it necessary to correct an error or remove an injustice."); § 1552(k) ("In this section, the term 'military record" means a document or other record that pertains to [] an individual member or former member of the armed forces."). Even Plaintiff agrees that, at least procedurally, it was impossible for the BCNR to directly order Plaintiff's retirement at the lieutenant junior grade level. *See* OA Tr. 37:9–14 (Court: "[Plaintiff] wouldn't have met those time requirements to go to the Retired List, correct?" Plaintiff's Counsel: "Right. He needed ten years of commissioned service.").

That the Board in 2008 made no grade determination of Plaintiff as a lieutenant (O-2E) gains reinforcement by the fact that the NPC in 2019 appeared to believe (albeit mistakenly) that Plaintiff could only retire as enlisted. *See* AR 577–78 ("Even after BCNR granted [Plaintiff] additional active duty service time . . . he still did not meet the threshold [to retire as an officer]"). The original 2008 decision, which never specifies what Plaintiff's retirement grade would be, obtained explicit ASN approval; the 2009 amendment determination does not appear to have obtained similar approval. *See* AR 11, 23.[8]

[8] The record does not reflect that the Secretary expressly or separately approved the 2009 amendment. At oral argument, Defendant indicated that, consistent with the record, the 2009 amendment had not been approved by the ASN and that such approval was unnecessary for what was, essentially, an administrative change. OA Tr. 10:20–25, 11:16–12:1.

Further, the 2009 amendment's reference to "(LT(jg))" cannot support the weight of Plaintiff's argument that this reference was a prior inconsistent decision by the Board. Again, the 2009 amendment aimed at fixing the administrative errors in the 2008 decision, which was meant merely to allow Plaintiff to become eligible to access a retirement fund. AR 11 ("Given the facts of the case and comments contained in the advisory opinion from the [DAJAG] . . . the only possible relief is to retore him to active duty which is clearly inappropriate or to correct the record to show that he qualified for retirement."), 94 ("Petitioner's separation was lawful, however, his case merits equitable consideration."); OA Tr. 51:7–9 (Plaintiff's Counsel: "They amended it because . . . technically he could not be placed on the Retired List as an officer in that grade."), 61:4–5 (Defendant's Counsel: "[The 2008 Board decision] directed relief that legally the Navy could not grant."). Reading the parenthetical as a determination of a future retirement pay grade becomes even more unlikely in the face of the clear text of the 2008 Board relief and supporting advisory opinions stating that Plaintiff's separation was lawful and his "performance was clearly unsatisfactory." AR 11 (2008 BCNR decision), 95 (advisory opinion of the DAJAG, stating that "[h]is fault was exclusively performance-related; he was not well-suited to clinical nursing" and that if he had appeared before the Competency Review Board, "it is not clear that he could have said . . . anything that would have salvaged his nursing career"). At most, the addition of "(LT(jg))" reveals that the Board "contemplated" (to use Plaintiff's words) or assumed that Plaintiff would retire as a lieutenant rather than a ruling on Plaintiff's satisfactorily-served rank for retirement, which was many years away at that point. *See* Pl. MJAR at 24; AR 925.

From Plaintiff's point of view, he might very well have read the parenthetical "(LT(jg))" in the record version of his 2009 amended relief and expected to be retired at the LTJG level. However, while the Court may sympathize with such disappointed expectations, it cannot look

through Plaintiff's eyes when reviewing the record. Rather, it proceeds with a "strong presumption of regularity" in the government's actions and holds otherwise only in the face of clear and convincing evidence in the objective record. *Banerjee v. United States*, 77 Fed. Cl. 522, 533 (2007) (citing *Richey v. United States,* 322 F.3d 1317, 1326 (Fed. Cir. 2003)); *Bowen v. Am. Hosp. Ass'n*, 476 U.S. 610, 626–27 (1986).

At the end of the day, Plaintiff's retirement pay grade would be determined once he applied for it, and it would be based on whichever rank the Secretary or his lawful representatives determined he had served satisfactorily. *See* OA Tr. 43:13–14 (Plaintiff's counsel stating that "it takes an affirmative request to the Secretary of the Navy to be advanced."); 10 U.S.C. § 8334(a) (describing "the highest grade in which he served on active duty satisfactorily, as determined by the Secretary of the Navy"); AR 715 (giving instructions to request consideration of advancement on the retired list and noting that "all service at the higher grade must have been performed satisfactorily as determined by the Secretary of the Navy"); *see also* OPNAVINST 1811.3A ¶ 5a (discussing authority for "[a]pproval of requests for voluntary retirement" as "rest[ing] with the Secretary"). Indeed, all the portions of the record to which Plaintiff points as referencing "(LT(jg))"—including the 2009 Amendment—reiterate this standard: Plaintiff will be "eligible" to retire at the "highest rank satisfactorily served." *See* AR 15, 16, 925. Accordingly, the ASN had no reason to explain any apparent inconsistency between a prior rank determination and her own because the Board's 2008–09 relief did not presume to make such a decision. As a result, the 2023 BCNR decision which Plaintiff challenges now did not need to explain any inconsistency in the Board's actions; it needed only to examine whether an error or injustice occurred in 2021, when the ASN determined that "ensign" was Plaintiff's highest rank satisfactorily served. AR 652.

**B. Whether the 2023 BCNR Decision was Unsupported by Substantial Evidence**

Next, Plaintiff argues that the Board's 2023 analysis, when determining whether the ASN's 2021 grade determination was unjust or erroneous, failed to consider the problem fully or consider all evidence. Pl. MJAR at 28–29. For instance, Plaintiff contends that the BCNR failed to consider his later, favorable FITREP, failed to consider the fact that his separation for three years rendered him unable to generate additional FITREPs, and drew an unjust negative inference from his constructive-service period when he could not generate any favorable FITREPS due to the separation. *Id.* Plaintiff adds that the Board purportedly failed to consider the lack of misconduct on his record. *Id.* at 29 (citing AR 665). According to Plaintiff, while the Board "recited" these arguments, such alleged recitation does not fulfill reasonable review. Pl. Reply at 12–13.

For its part, Defendant argues that the Board's decision is adequately supported by its written explanation, its invocation of the ASN's opinion, the negative remarks in Plaintiff's FITREPs, and Plaintiff's service record. Def. Mot. at 20–21. The Board, Defendant contends, indicated it considered both Plaintiff's favorable and unfavorable FITREPs. *Id*. (citing AR 736). Additionally, Defendant asserts that the Board adequately explained its reasoning, and that there is no material inconsistency between the 2008 relief and the ASN's grade determination. *Id.* at 20 (stating that the Board "provide[ed] a reasoned explanation of why the BCNR found no error or injustice in the Acting ASN [] decision"), 22 (arguing that Plaintiff's argument that the Board failed to address the earlier 2008 relief is based on a "mischaracterization" of the 2008 relief). Defendant argues that the 2023 Board addressed Plaintiff's arguments about the Board's drawing of adverse inferences in 2009 based on an allegedly incomplete or tainted record in its recitation of Plaintiff's contentions in his application. *Id.* at 21 (citing AR 738). Defendant also notes that the 2023 Board also stated that it reviewed Plaintiff's "entire record and application," in addition to "carefully weigh[ing] all potentially mitigating factors." *Id.* (quoting AR 739). As for Plaintiff's

remaining arguments (that the Board failed to consider Plaintiff's deprivation of three years of service and his lack of misconduct), Defendant asserts that these points were all discussed and addressed in the BCNR's 2009 decision. *Id.* Finally, Plaintiff's service record, Defendant argues, reflects that Plaintiff had "clearly demonstrated his inability to provide safe nursing," and, in combination with the other bases listed above, provided substantial evidence supporting the Secretary's denial of his retirement at the LTJG level. *Id.* at 22 (quoting AR 379).

After a review of the record and applicable law, the Court agrees with Defendant. The BCNR's 2023 decision sufficiently explains how there is no injustice in Plaintiff's record as a result of the ASN's grade determination. AR 606–611. In addition to highlighting Plaintiff's mitigating evidence and the evidence in the record, the decision accurately incorporates reasoning from the ASN's advisory invoking Plaintiff's unsatisfactory FITREPs received during his brief time as a commissioned officer. AR 608 (quoting the ASN's advisory opinion's examination of his adverse fitness reports), 609–10 (detailing Plaintiff's arguments, in response to the ASN's advisory opinion, that the ASN's decision "unfairly draws adverse conclusions from" a "tainted" and "uncomplete" service record, and noting that Plaintiff's record is "free of misconduct."). Furthermore, the Board's 2023 decision lays out the context of both the positive and negative FITREPs. AR 606–08 (facts about Plaintiff's service history), AR 611 (finding no error in the ASN's determination); *see also* OA Tr. 54:9–18 (Plaintiff's counsel affirming that the Navy is required to perform an "overall" determination of his performance based on the FITREPs). Nor is this a situation where the military corrections board entirely ignored countervailing evidence, as was the case in *Draper*, another Court of Federal Claims decision. *Draper*, 163 Fed. Cl. at 292. Here, the Board explicitly recognized that Plaintiff's last FITREP was favorable and had included a recommendation of "Promotable." AR 607. This recognition similarly distinguishes the Board's

actions from those of the board in *Chisolm*, which had "neither then nor later discussed the content of any of the three [countervailing] letters." *Chisolm*, 41 F. App'x at 400.

Finally, the record gives substantial evidence to the Secretary's conclusion that Plaintiff did not satisfactorily serve during his three years as an LTJG. Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Strand*, 951 F.3d at 1351 (quoting *Consol. Edison Co. of N.Y. v. NLRB*, 305 U.S. 197, 229 (1938)). Both at the time the BCNR made its decision and now, it was undisputed that Plaintiff received poor reviews from June 2003 to June 2005—nearly two-thirds of his time served as an LTJG (not including constructive service). *See supra* at Facts. Specifically, from 2004 to 2005, he received grades of "Below Standards," for professional expertise. *See* AR 859, 863. The FITREP from June 2004 to February 2005 specified that Plaintiff "[s]truggled clinically; had difficulty with time management, prioritization and critical thinking skills," that he "was counseled six times for clinical related issues," and "required supervision/oversight" even after counseling. AR 860. For Plaintiff's FITREP from March 1, 2005 to June 24, 2005, his supervisor stated that Plaintiff's "performance merits comments to effect his marks compared to his peers," including that he still "[s]truggled clinically," "displayed knowledge level of a new graduate nurse," "[c]ontinued to demonstrate weak critical thinking skills," and "required direct clinical supervision." AR 864. The CRB also assessed Plaintiff as having "clearly demonstrated his inability to provide safe nursing care." AR 379. Its review notes Plaintiff's "clinical discrepancies including order[ing] medication not given, starting IVs without gloves, and giving Morphine and Percocet at the same time." AR 374. In all, Plaintiff's record, which "was considered by the Board," provides far "more than a mere scintilla of evidence" that his performance at the LTJG rank was unsatisfactory. AR 606; *In re Nuvasive, Inc.*, 842 F.3d 1376, 1379–80 (Fed. Cir. 2016) (quoting *In re Kotzab*, 217

F.3d 1365, 1369 (Fed. Cir. 2000)). Indeed, as the 2023 decision notes, the 2008 Board decision, as well as the advisory opinions it relied on, consistently reiterate that Plaintiff's separation was lawful and must stand because of his substandard performance as an officer. AR 611 ("Further, a review of the Board's original decision . . . reveals that the Board did not find your service in the rank of LTJG to be satisfactory."), AR 11 ("[Plaintiff's] performance was clearly unsatisfactory."), AR 10 ("[I]t is not clear that he could have said . . . anything that would have salvaged his nursing career [at the Competency Review Board]."). This is evidence which "a reasonable mind might accept as adequate to support a conclusion." *Strand*, 951 F.3d at 1351 (quoting *Consol. Edison Co. of N.Y.*, 305 U.S. at 229). Thus, the Board was rational in concluding there was no error or injustice to correct in the ASN's determination. *See Strand*, 951 F.3d at 1351. Given this evidence, for the Court to prefer Plaintiff's arguments that his separation was unjust and that his last FITREP (covering a few months of service) was favorable would inappropriately interfere with the Secretary's discretion to determine what constitutes sufficiently satisfactory service as a lieutenant in the Navy. *Heisig*, 719 F.2d at 1156 ("It is equally settled that . . . courts cannot substitute their judgment for that of the military departments when reasonable minds could reach differing conclusions on the same evidence."); *Draper*, 163 Fed. Cl. at 290 ("[T]his Court does not serve as a 'super correction board.'" (quoting *Stine*, 92 Fed. Cl. at 791)).

### C. Whether the 2023 BCNR Decision Violated Navy Regulations

Finally, Plaintiff argues that the Board allegedly violated Navy regulations encoded in OPNAVINST 1811.3A, *Voluntary Retirement and Transfer to the Fleet Reserve of Members of the Navy Service on Active Duty* (Feb. 28, 2012) (OPNAVINST 1811.3A). Pl. MJAR at 29; Pl. Reply at 9–10. The regulation lists multiple factors that "are considered" in transfers to the Fleet Reserve, including:

> (1) Time served in current or higher grade[;] (2) If a member voluntarily requested retirement or transfer to the Fleet Reserve in the next lower grade and has not fulfilled the required time-in-grade requirements as stated in paragraph 7[;] (3) Any conviction by courts-martial, report of misconduct, moral, or professional dereliction, or conduct not in the interest of national security[;] (4) The nature and severity of any misconduct.

OPNAVINST 1811.3A, ¶ 7(i).

Plaintiff asserts that the Board's decision, ASN's decision and memorandum gave "no indication" that it considered these factors. Pl. Reply at 10. Specifically, Plaintiff accuses the Board's decision of failing to identify whether the ASN considered Plaintiff's lack of misconduct. Pl. Reply at 9–10; *see* OPNAVINST 1811.3A, ¶ 7(i)(3)–(4) (listing, among the factors considered, "(3) Any conviction by courts-martial, report of misconduct, moral, or professional dereliction, or conduct not in the interest of national security[;] (4) The nature and severity of any misconduct"). Defendant responds that there is no requirement for the Board to "memorialize its consideration of each factor," and the Board's actions are not arbitrary simply because the Board does not discuss "every potentially relevant consideration." Def. Reply at 9.

The Court agrees with Defendant; Defendant did not violate OPNAVINST 1811.3A. First, the ASN's 2021 memorandum clearly referenced OPNAVINST 1811.3A in considering its decision. AR 652. Under OPNAVINST 1811.3A, the Secretary is not obligated to lay out his or her analysis of the factors extensively; it merely states that the factors "are considered" in transfer decisions. OPNAVINST 1811.3A, ¶ 7(i)(3)–(4). This dictate is very different from a dictate to provide a thorough (or any) written explanation of the application of the factors; indeed, in comparison, other naval regulations requiring that the Secretary provide a brief explanation for his denial of a recommendation by the Board say just that. *See, e.g.*, 32 C.F.R. § 723.7(a) ("If the Secretary's decision is to deny relief, such decision shall be in writing and, unless he or she

expressly adopts in whole or in part the findings, conclusions and recommendations of the Board, or a minority report, shall include a brief statement of the grounds for denial.").

Additionally, the BCNR's 2023 decision acknowledges Plaintiff's protests that there is no evidence of misconduct on his record and does not controvert this fact. *See* AR 606–611. Plus, the 2023 decision explicitly affirms that the Board considered "all material submitted in support" of his application and gives extensive summaries of relevant parts of Plaintiff's record. AR 606, 610. While it would have been ideal for Defendant more thoroughly to explain its analysis of this factor, that is not required by the regulation—and here, the Board's "path may reasonably be discerned." *State Farm*, 463 U.S. at 43 (quoting *Bowman Transp., Inc.*, 419 U.S. at 286). In sum, Plaintiff has not sufficiently shown that Defendant's actions were arbitrary or capricious, in violation of applicable law or statute, or unsupported by substantial evidence.

## CONCLUSION

Accordingly, for the reasons stated above, the Court **DENIES** Defendant's Motion to Dismiss (ECF No. 16), **GRANTS** Defendant's Motion for Judgment on the Administrative Record (ECF No. 16), and **DENIES** Plaintiff's Motion for Judgment on the Administrative Record (ECF No. 11). The Clerk of Court is **DIRECTED** to enter Judgment accordingly.

IT IS SO ORDERED.

Eleni M. Roumel
ELENI M. ROUMEL
Judge

July 31, 2026
Washington, D.C.